Good morning, your honors. And may it please the court. My name is Sylvia Miller, representing Maria Pablo Matias and her son. I would like to reserve two minutes of my time for rebuttal. Your honors. Thank you. Your honors, there are two issues I would like to discuss today in the following order. First, why the new threats from Miss Pablo's abusive ex do constitute a material change in circumstances? And second, why Miss Pablo established a prima facie case for asylum and the BIA abused its discretion in finding otherwise? First, on that first question, how are the material change in her personal circumstances? I, you know, I recognize that that's what you're asserting here. But don't you also need to show material change in country conditions in Guatemala? And if so, what we're Yes, your honor, the renewed threats from her abusive ex, who is in Guatemala, are a material change in the country conditions of Guatemala. Of course, they relate to her But because her ex is in Guatemala, and is, you know, renewing these threats years after she left, I don't believe that that is a change in her personal circumstances, which would be something that maybe happened solely to her in the United States. On that, I would think this would be something, a distinction that would come up a lot. So if there, if people in your circumstance could succeed, based on personal change, I mean, it's not so much that part of it is personal. It's more than it's not a change in country conditions, because in asylum, we're usually looking at dictators, police, that sort of thing. How do you treat this group? Do you have any cases that would support your argument there? Yes, your honor. In the last footnote of our supplemental brief, there is it's an unpublished case where an abuser was deported back to Guatemala and making active, ongoing threats to an applicant. And those active ongoing threats by this individual who was deported back to Guatemala, constituted a material change. Also, I think the case of Basin V. So that's the Lopez versus Sessions. Correct, your honor. Yes, Lopez V. Sessions. And for published cases, I think Basin V. Gonzalez from 2005 also has a useful analogy where a woman had two sons who were in changed circumstances where the, you know, disappearances of additional family members. And so she was alleging changed facts that really related only to her family and not necessarily a countrywide change, but really additional harm to family that cumulatively overcame what the BIA had identified as defects in her original case. Can I ask a different question, a factual question? At the hearing, she testified that after she came to the United States, her husband is still threatening her. He's still saying, if the day ever comes that I go back to my country, to my town, that he would kill me. But God has eliminated me. And they want to help me come over here in the United States. And I feel good over here. I don't feel persecution here. And he's still saying he's still looking for me and so on. So I don't see how the fact that when she was actually that, I don't see how that's changed. In other words, quite apart from the fact that this is whether it's personal. And I think that there is some support, as I understand it, for the proposition that you can have a changed condition if your conditions change. But how did they change? Yes, Your Honor, I think there is a change, because if you look at the IJ expounding in both of his decisions on this view that her ex really wanted nothing to do with her. Well, that may be, it may have been wrong, but she testified at the time that he was making threats against her if she came back. And now she's she's testifying that he's making threats against her if she comes back. And Your Honor, we do think that these are qualitatively different, partly because they're coming so many years after and that, you know, the threats right after she left, right after separating from a partner, you know, could be tracked up to, you know, heat of passion or anger. But when an ex, a former partner, is years later still making these cold blooded threats of murder against someone, I think that's substantially more chilling. These threats also show because they arose in the context of Miss Pablo requesting a passport for her son. It also goes to this point of her inability to fully untangle herself from this relationship because they have a child in common, which also goes to, you know, her social group of whether you have a really hard argument because the that she said exactly the same thing at her hearing. Yes, Your Honor, but that was again, you know, I think that's how long after her hearing wasn't right after she left, it was must have been a couple of years after she left. When was her hearing relative to when she left? I believe, let's see, her. Initial hearing was in 2016. OK, and where did she leave? And she left in April of 2015. So it was less than a year later. OK. And then when were the current threats that she, that are the basis for the reopening? And the current threats occurred in the summer of 2019. But the entanglement would have been, you made a point about, you know, she remains entangled with him, but isn't that consistent throughout? That is the whole problem, whether she's in Guatemala, out of Guatemala, is that her entanglement with him remains the same. It's not like it's a new person or a new threat that you would have. Isn't that also a consistent thread? His attitude arguably may have changed now and then, although, as Judge Berzon points out, it wasn't just the return that was causing threats, right? She was making threats when he didn't think he was. It was speculative if if she comes back, but he didn't think she was going to come back. Yes, Your Honor, I mean, the entanglement is the same, but if she is actually, you know, the government was actively trying to deport her to Guatemala. And so when she's living in Guatemala and she'll be forced to consistently engage with him versus I think her ability to remain, to maintain that distance while she's in the United States is a material difference. And I see I am out of time, so I'd like to reserve the remainder of my time for rebuttal. Thank you. OK, thank you, Ms. Ottman. Good morning, Your Honors. May it please the court.  The court should deny this petition for review because petitioners have failed to establish that the agency abused its discretion in denying their untimely motion to reopen. The board made two independently dispositive determinations in support of its denial. First, it found that petitioners failed to establish a material change in country conditions since the time of their hearing, and alternatively, that the petitioners failed to establish their prima facie eligibility for relief. Concerning the material change in country conditions, as you were just discussing, the board found that when looking at the evidence of country conditions evidence presented, which was three articles, only one of which discussed Guatemala at all, that they had not established any change. And then also when looking at the renewed threats, that also did not constitute a change. The question here is whether or not there is a qualitative difference between what was presented at the time of the removal hearing and what is being presented at the time of the motion to reopen. And when you look at the country conditions and the renewed threat, they represent a continuation of the precise set of circumstances that was alleged at her asylum hearing. Considering the country conditions evidence, petitioners do not dispute this finding of the board in their opening brief, and so it should be deemed waived. In fact, the problem is that originally they said that the conclusion was that her husband didn't have any interest in her. That appeared to be wrong because she testified that he did have a continuing interest in her and was calling her and continuing to threaten her. Now, she says, well, he's threatening her specifically, but she did say that in her hearing. So essentially, what she testified to hasn't changed, but what the board, what the IJ found about her condition didn't change because he found that the husband had no interest in her and the husband now has interest in her, but apparently had one then too. So that's the anomaly here. The anomaly is that if you take what was found the first time to be an established fact, then perhaps her situation has changed. It just appears that what was found the first time didn't seem to reflect the record. The first time. Well, I think the immigration judge's findings, the portions that I think it's notable that the court did not deny on any basis related to the recency or immediacy of the threats for asylum and withholding. That was completely denied based on cognizability alone, and specifically the board held that it was impermissibly circular. To the extent that it was part of their cat determination, the board also or the agency had an independent reason for denying cat, which was failure to establish government acquiescence. And it's not clear how the renewed threats would be material to overcoming that hurdle for cat. So it's regarding the materiality of the renewed threats, which I think is what petitioners arguments on appeal are really going to whether or not the renewed threats are material to her claim. She hasn't established that they are because, you know, that inquiry is really whether or not circumstances have changed sufficiently that someone who didn't have a legitimate claim now does. And it's not clear how these renewed threats would overcome the deficiencies that were presented. One thing that's changed is that our case law with regard to the validity of the matter of a being circularity issue has changed. Absolutely, yes, there has been intervening case law in matter of the excuse me, just as random. So as noted in brief, we have the issues of the two independently dispositive basis to deny this petition for review, which is that there has been no change. And also that petitioners waived their prima facie determination, which are both independent basis to deny the petition for review. But in the event that the court finds abuse of discretion, we would recommend remand in this case for the board to be able to consider. What you're saying on the change issue is that the BIA didn't rely on this notion that her husband had no interest in her anymore. Correct. When looking at the reason for denial, it was unrelated to the recency and the portions that were cited to you by the immigration judge. He did reiterate some of his concerns about her credibility within the second decision. But it's important to remember the posture of this case. There was an initial denial by the immigration judge for credibility reasons, which was appealed. The board remanded finding clear error in that finding. And so within his discussion of his concerns with her credibility, he ultimately found her credible because he was bound to by the board's determination and then denied on an alternative basis unrelated to the immediacy of the threats. Council, going back to the timing issue. Are you familiar with this Lopez unpublished case that the council adverted to? Yes, your honor. And I would seek to distinguish that case from there's a very important fact that is missing in this case, which was that the petitioner's ex-partner was not in the country of removal at the time. Of the initial removal hearing, and then was at the time of the motion to reopen. So that is a. In Lopez, the country condition changed because the personalities in the country change. Is that it's not it's not completely clear. And I would note that that case does cite to Chandra V. Holder, which is the that case was the one that found that there had to be sufficient evidence of a change in country conditions. In order for the personal circumstances or the personal change in personal circumstances are only relevant to this analysis in that they can show materiality of the change. So the in broad strokes, the agency is required to notice and think about the personal conditions, but it has to be in the context of change country conditions. It does. And I argue that the agency did that here. Absolutely. The agency looked at the evidence of actual country conditions, but they also found just when looking at the threats alone, that wasn't a change. It's not a change. It's a continuation of the precise set of circumstances that was alleged at the time of the hearing. At the time of the hearing, she alleged that her ex-partner in July, she'd entered in April 2015. In July 2015, her ex-partner called her and directly threatened her and her child if they ever returned to Guatemala. At the time of the motion to reopen, she is alleging that her ex-partner has indirectly threatened her through speaking to her father and her uncle, saying that he will seek to harm her and her child if they ever are removed to Guatemala. Certainly, that is a very frightening scenario to be in, but it is materially the same evidence that was presented at her hearing. There's no substantive difference in those threats. And her ex-partner has remained in Guatemala. You said that she said at the hearing that she came in April and this threat was in July. Where is she saying that? I don't know. What she says, he's still threatening me. He's still saying that and he's still saying this. He contacted me. Where's the July date? I believe I have it listed here. I believe it was in the transcript on page record site 447. He said, if I ever see you again, the first time I see you. I know he said all that, but how do you know he said it just two months after she came here? I believe that was part of the transcript within that record site. I don't have the precise date, but I'm happy to supplement the record. I'm looking at it and I don't see it. He said he's still threatening me. This was not in July. This was later than that, right? This was at the hearing. I was under the impression that the final threats that were received directly. I think she believed that he was continuing to look for her. That was her belief was that he was continuing to look for her and he would continue if she were ever removed to Guatemala. I think that was her belief. But I believe the last time she had any direct contact with him was July 2015 when he called her. Well, that's not on page 447. Maybe it's somewhere else. I can certainly supplement the record with where that is. I mean it's only material in that your opponent is arguing that it was right after she came here and you're essentially saying it was right after she came here. But on the record I see here it doesn't say that. Anyway, go ahead. If we were to remand for the BIA to reconsider the petitioner's prima facie eligibility in light of Diaz-Reynoso without ruling on BIA's assessment of changed country conditions, I'm kind of trying to figure out what would happen if it were set back with the BIA. Could the BIA just focus on the country conditions at that point or would it have to deal with the intervening authority? I think that in order to remand this case, the court would need to make a determination on the material change in country conditions and whether or not the board of use its discretion in that because the failure to establish a material change in country conditions is dispositive to her ability to reopen the case because it was an untimely filing. So even if the court was inclined to take issue with the prima facie determination, the issue of the material change remains. On the next page, it does say two months after I entered here he called me. So that must be where that happened. Yes, I think it was within that. I apologize. I should have had that specific. Was that responsive, Your Honor, Judge McGray? Yes. Um, so again, if Your Honors don't have any further questions, I will conclude that the court should deny the petition for review because there are two independently dispositive bases that petitioners failed to establish a material change, which is a threshold determination required because they had filed an untimely motion to reopen. And then alternatively, they failed to establish the prima facie. Okay, thank you very much, Ms. Miller. Your Honors, I would like to discuss opposing counsel's point that the materiality has to go only to the basis of the BIA denial. I think that's problematic in this case because the sole basis for the BIA's denial is this single conclusory sweeping generalization about the circularity of her social groups um, lacking any analysis at all, not engaging in any facts of Ms. Pablo's case. And it presents the same defect that this court pointed out in Diaz-Renoso. So if the material change in country conditions can only go to rebutting the basis for the denial, then it's a little difficult to imagine what facts a person could present to rebut just a sweeping generalized statement that's a blanket legal conclusion. And as we argue in our brief, Ms. States, part of Ms. Pablo's social group. Sorry, Your Honor. I'm saying you didn't try to present that, you know, there's a new dictator in Guatemala, or the police are better or worse than they were, or that things of that sort. That at least if you read Lopez, that you cite as saying, your individual circumstances need to at least be related to the country conditions, then you don't get that purchase, do you? That is, did you submit anything that would tie his threats, whether increasing or decreasing, to any change in the conditions as a whole? And Your Honor, the generalized country conditions in Guatemala did not, there was not a substantial change. But again, we hold that a change in the individualized risk of harm to Ms. Pablo is sufficient to constitute a material change in country conditions. And I see I'm out of time. Thank you, Your Honor. Okay, thank you very much. Thank you both for your arguments. The case of Pablo Matias v. Garland is submitted. I didn't say before that the first case on the calendar, United States v. Byrd has been submitted on the briefs.
judges: Boggs, Berzon, Murguia